BIG HORN COUNTY COMMISSION-
ERS, Appellant (Respondent below),

v.

DeVere T. HINCKLEY, Appellee
(Petitioner below).

No. 4987.

Supreme Court of Wyoming.

April 17, 1979.

Robert A. Gish, Big Horn County Atty., Basin, for appellant.

C. S. Hinckley, of Hinckley & Hinckley, Basin, and John W. Davis, of Davis & Donnell, Worland, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and MAIER, District Judge.[*]

ROSE, Justice.

This appeal questions the ability of the appellant, Big Horn County Commissioners, to establish a county road under the common-law doctrine of prescription without complying with the condemnation provisions set forth in § 24–60, W.S.1957, C.1967 [now § 24–3–118, W.S.1977][1] and the provi-

---

[*] MAIER, District Judge, was assigned to sit for ROONEY, J., who recused himself because he, as Attorney General for the State, had been indirectly connected with the subject matter of the case.

1. Section 24–3–118, W.S.1977, which is the same as § 24–60, W.S.1957, C.1967, provides:

"(a) *Hearing; determination of damages.* —At the next meeting of the county commissioners after the report of the appraisers has been filed, or as soon thereafter as may be practicable, the said board may hear testimony and consider petitions for and remonstrances against the establishment or alteration, as the case may be of any road, or may establish or alter any road or may refuse so to do, as in the judgment of the said board, the public good may require, but in case there shall be no claim for damages filed, they shall act as speedily as possible in the matter. Said board may increase or diminish the damages allowed by the appraisers, and may make such establishment or alteration of any road, dependent or conditioned upon the payment, in whole or in part, of the damages awarded or expenses incurred in relation thereto by the petitioners for such road or such alteration of any road.

"(b) *Payment of damages; right of appeal.*—The amount of damages awarded, if any, shall immediately be paid to the person or persons entitled thereto or deposited with the county clerk for delivery to such person or persons, which payment shall be without prejudice to the right of such person or persons to appeal to the district court as provided by law.

"(c) *Entry into land.*—When the road has been established and the award has been paid by the board of county commissioners or by the state highway department, to the person or persons entitled thereto, or deposited with the county clerk, the highway authorities and their contractors and employees may take possession and exercise full control of the land within the right-of-way of the road so established.

"(d) *Abandonment prohibited; appeal.* —After the county or the state highway department has taken possession of the right-of-way, there shall be no abandonment of the establishing of the highway, and in the event of an appeal by an owner of real estate affected thereby to the district court from the award finally made by the board of county commissioners, the said board shall pay the amount finally determined to be due.

sions regarding a showing of necessity set forth in § 24–6(b), W.S.1957, C.1967 [now § 24–1–105(b), W.S.1977].[2] The district court found that the Board must comply with these provisions and remanded the case to the Board for further proceedings. We will hold that there must be further proceedings in this case, but that the Board is not required to comply with condemnation statutes when seeking to establish a county road by prescription.

By resolution dated November 3, 1976, the Board undertook to establish a public road under and by authority of § 24–1, W.S.1957, C.1967, 1975 Cum.Supp. [now § 24–1–101, W.S.1977].[3] Notice of this ac-

"(e) *Recordation of land certificate.*—A certificate, authorized by the board of county commissioners and signed by its chairman, setting forth the legal description of the property taken shall be recorded in the office of the county clerk, and indexed in like manner and with like effects as if it were a conveyance of the easement or right-of-way from said owners to the county.

"(f) *Alteration, etc., survey of site; recordation of survey.*—If, upon considering and acting upon the report of the viewers or otherwise, the board of county commissioners shall decide to lay out or alter any road, they shall cause the county surveyor to make an accurate survey thereof, if such survey is necessary, and to plat the same in books to be provided by the county for such purpose, and the county clerk shall record in the same books opposite or near such plat so that the same may be easily ascertained to be concerning the platted road, the proceeding of the said board in relation to the location, establishment or alteration of said road, in order to keep in a separate book a record of all the county roads of that county."

2. Section 24–1–105(b), which is the same as § 24–6(b), W.S.1957, C.1967, provides:

"(b) Any landowner or interested party desiring to raise any question with respect to the necessity of the taking of the land for road purposes under the provisions of chapter 48, article 3, Wyoming Compiled Statutes, 1945, shall do so by filing, within thirty (30) days after the last publication of notice of the proposed location of such road, a petition in the district court of the county in which the land or any part thereof is located. The district court shall within ten (10) days, if possible, from and after the filing of said petition hear and determine the question of necessity. Provided that when said petition is filed, the burden of showing necessity shall be sustained by the county or the state highway department. If no petition, to raise the question of necessity, is filed within the said thirty (30) day period, the necessity shall be presumed and the question cannot later be raised."

3. Section 24–1–101, W.S.1977, which is the same as § 24–1, W.S.1957, C.1967, 1975 Cum. Supp., provides in relevant part:

"(a) . . . *Except, nothing contained herein shall be construed as preventing the*

*creation or establishment of a public highway right-of-way with reference to state and county highways under the common-law doctrines of adverse possession or prescription either prior to or subsequent to the enactment hereof.* If any such board shall resolve the creation or establishment of a public highway right-of-way based upon the common-law doctrines of adverse possession or prescription, it shall, following the filing of a plat and accurate survey required in accordance with the terms and provisions of section 24–51 [§ 24–3–109] of the statutes, proceed with the publication of the proposed road for three (3) successive weeks in three (3) successive issues of some official newspaper published in the county, if any such there be, and if no newspaper be published therein, such notice shall be posted in at least three (3) public places along the lines of the proposed road, which notice shall be exclusive of all other notices and may be in the following form:

"To all whom it may concern: The board of county commissioners of ............... county has resolved the creation and establishment of a public highway right-of-way under the common-law doctrine of prescription in that the road was constructed or substantially maintained by the (either the state or county) for general public use for a period of (ten years or longer) said road commencing at ........... in .......... county, Wyoming, running thence (here described in general terms the points and courses thereof), and terminating at ..........

"All objections thereto must be filed in writing with the county clerk of said county before noon on the .......... day of .......... A.D., .........., or such road will be established without reference to such objections.

................................
County Clerk
dated .......... A.D.

"(b) The county commissioners shall cause a copy of the above notice to be mailed by registered or certified mail to all persons owning lands or claiming any interest in any lands over or across which the road is proposed to be created or established. The publication, posting and mailings of such notice shall be a legal and sufficient notice to all

tion was published, indicating that interested persons should file their objections by December 15, 1976. During October and November, a survey was made and a map prepared, showing the location of the proposed road. Hinckley received actual notice of the Board action and filed a protest with the Board on December 6, 1976. On December 8, 1976, Hinckley's son appeared before the Board to protest the proposed road and was apparently told there would be a hearing on December 15, 1976—although the son, who is also appellee's attorney on appeal, denied receiving notice of the hearing.

On December 14, Hinckley filed a petition (Civil Case No. 12181), requesting that the Board be required to show necessity in accordance with § 24–6(b), supra. Notwithstanding notice of this petition, the Board proceeded to hold the December 15 hearing and establish by prescription the road in question, denominated County Road No. 602. On January 7, 1977, Hinckley applied for and received, after an ex parte hearing, a writ of mandamus, ordering the Board to nullify its December 15 proceedings. Prior to the Board's compliance with the writ of mandamus, the Board sought a vacation of the writ. Concluding that Hinckley had an adequate remedy at law—evidenced by the petition that had previously been filed—the district court, on January 31, 1977, vacated the writ and ordered the December 15 proceedings reinstated until such time as the matter could be fully litigated.

On February 4, 1977, Hinckley filed a petition for review (Civil Case No. 12206), appealing the Board's December 15 decision to establish County Road No. 602. This petition, which alleged lack of notice of the December 15 hearing, was filed pursuant to § 24–1, supra, and the Wyoming Administrative Procedure Act. The district court subsequently entered an order finding that the Board had failed to comply with § 24–6(b), supra, and other related statutes; that Hinckley's petition for review in Civil Case No. 12206 was timely due to the tolling effect of the intervening mandamus action; that Civil Case No. 12181 should be dismissed with prejudice to the Board; and that Case No. 12206 should be remanded for an administrative hearing consistent with §§ 24–6(b) and 24–60, supra.

The Board asks the following questions on appeal:

1. Is the Board required to hold a hearing pursuant to the statutory condemnation provisions when it seeks to establish a county road by prescription?

2. Did the district court err in dismissing Civil Case No. 12181 with prejudice as to the Board?

3. Did the district court have jurisdiction over Hinckley's petition for review in Civil Case No. 12206?

Hinckley argues that this court has no jurisdiction over this appeal, and that the Board had no jurisdiction to establish a county road because of the allegedly defective notice.

persons owning lands or claiming any interest in lands over which the proposed road is to be created or established. No viewers or appraisers shall be appointed, nor shall any damage claims be considered or heard, and the sole objections to be heard by the board shall be directed against the creation or establishment of such right-of-way under the common-law doctrines of adverse possession or prescription. Any objector may appeal from the final decision of the board of county commissioners to the district court of the county in which the land is situated. Notice of such appeal must be made to the county clerk within thirty (30) days after such decision has been made by the board, or such claim shall be deemed to have been abandoned. Within ten (10) days after the notice of appeal is filed in his office, the county clerk shall make out and file in the office of the clerk of the district court, in his county, a transcript of the papers on file in his office, and the proceedings of the board in relation to such creation and establishment. The proceedings on appeal shall be governed by the Wyoming Administrative Procedure Act [§§ 9–4–101 to 9–4–115]. If the appeal is upheld the appellant shall be reimbursed by the county for all reasonable costs of asserting his claim." [Emphasis supplied] All those portions of § 24–1–101, supra, that do *not* appear in italics were added by the legislature in 1973. S.L.1973, ch. 74, § 1.

■ Turning first to Hinckley's jurisdictional contentions, this court previously denied Hinckley's motion to dismiss. This motion, which is renewed here, is premised on the belief that the district court's order—remanding the case to the Board for a hearing on necessity and other issues—is not a final order under Rule 1.05, W.R.A.P., and our holding in *Arp v. State Highway Commission*, Wyo., 567 P.2d 736 (1977). We determined previously, and now hold, that the district court's order affects a substantial right of the Board and prevents a judgment in favor of the Board's establishment of a road by prescription under § 24–1–101, supra. It is, therefore, a final appealable order under Rule 1.05(1), W.R.A.P.

■ Hinckley's second jurisdictional contention is premised on the belief that the Board did not have jurisdiction to establish County Road No. 602 because the published notice failed to contain a "points and courses" description of the proposed road as required by § 24–1–101(a), supra. Hinckley relies, in support of this position, on our decision in *Ruby v. Schuett*, Wyo., 360 P.2d 170 (1961). In *Ruby* we held that a county board has no jurisdiction to establish a public road by condemnation where there has been no survey made and the published notice fails to describe the points and courses of the proposed road. This court has also held, however, that where there is a map of the proposed road on file, a defect in the description of the proposed road was a mere irregularity, not fatal to the Board's jurisdiction. *Harris v. Board of County Commissioners*, 76 Wyo. 120, 301 P.2d 382 (1956). In the present case, the undisputed evidence is that a map was made in November, 1976, and was available in the Big Horn County Clerk's Office for public inspection. Hinckley made reference to this map and survey in his original December 14, petition. While it might be preferable to provide a points-and-courses description, or to incorporate the file map of the proposed road, we hold that the Board had jurisdiction to proceed to establish County Road No. 602 by prescription.

## ROLE OF SECTIONS 24–60 and 24–6(b)

The district court found that in order to establish a public road by prescription the Board must follow the procedures outlined in § 24–60, supra, to which § 24–6(b), supra, applies. The effect of this finding, and the resultant remand for further proceedings, was to require the Board to re-commence proceedings to establish County Road No. 602—but this time the Board would be required to follow the procedures set forth in § 24–1, supra, *and* those set forth in § 24–60, supra. In addition, and in accordance with § 24–6(b), supra, the Board would be subject to a district court proceeding on the question of necessity.

The Board argues that in order to establish a public road by prescription it need only comply with the procedures set forth in § 24–1, supra, and that it would be anomalous to require the Board to show necessity under § 24–6(b), supra.

### A. Section 24–60

The basis for Hinckley's and the district court's position is language contained in our decision in *Board of County Commissioners of Carbon County v. White*, Wyo., 547 P.2d 1195 (1976). In that case, the Board sued to enjoin the Whites from closing a road over lands owned by the Whites, claiming, inter alia, that the County had acquired title to the road by prescription. The County, to support this claim, asserted public use and county maintenance for 10 years, and other actions by the Board including the filing of a plat. The facts disclosed that the Board had commenced condemnation proceedings pertinent to the proposed road in 1960 and 1963, but had never completed such proceedings in accordance with § 24–60, supra. We refused to "countenance this behavior as granting to the county any right in this road . . . ." 547 P.2d at 1198. In the process of coming to this conclusion, we made the following statement:

"The answer to appellant's first position lies in *Nixon v. Edwards*, 72 Wyo. 274, 264 P.2d 287, and *Rocky Mountain Sheep Co. v. Board of County Com'rs of Carbon County*, 73 Wyo. 11, 269 P.2d 314.

578

In *Nixon*, Justice Blume—in a thoughtful opinion, which must be interpreted as an effort to clarify the effect of what is now § 24–1, W.S.1957, C.1967, 1975 Cum. Supp., and related statutes—set out the holding that prescriptive use is not sufficient to establish a public or county road and that this must be established by legal authority. This holding is reinforced in the case of *Rocky Mountain Sheep Co.*, with the comment upon the plain language in *Nixon*, 269 P.2d at 320. This last case further closes the door to claims of legal title arising by prescriptive use without proper lawful establishment proceedings of the claimed road. *Rocky Mountain also held that the county commissioners must comply with § 48–322, W.C.S.1945, 1957 Cum.Supp., which was amended and now appears as § 24–60, W.S.1957, C.1967, in order to effect the establishment of a public road.* As will be evidenced from an examination of § 24–60, requirements were added to the section as it originally stood, evidencing legislative concern that there be a complete and specific proceeding when lands were sought to be taken for public roads. It is to be noted that this section provides that the board may hear testimony and does provide that damages, if any, be assessed and immediately paid to the persons entitled thereto or deposited with the county clerk for the use of the landowner. It provides for the right of entry only 'when the road has been established' and the award paid. It further provides for the recording of a certificate to be executed by the chairman of the board and indexed in the same manner as if it were a conveyance of the right-of-way. . . ." [Emphasis supplied] 547 P.2d at 1197.

It is the emphasized portion of this statement—and the fact that our decision in that case was rendered some three years after the amendments to § 24–1, supra—that led Hinckley and the district court to conclude that the Board must do something more than follow the procedures set forth in § 24–1, supra.

■ We now conclude—after examining the 1973 amendments to § 24–1, supra, of which there was no mention in the *Board of County Commissioners v. White* decision—that in order to establish a road by prescription the county need only follow the procedures set forth in § 24–1, supra. In reviewing the legislative history of § 24–1, it is noted that the following language was added to the present § 24–1, supra, in 1955:

"Except, nothing contained herein shall be construed as preventing the creation or establishment of a public highway right-of-way with reference to State Highways only, under the common law doctrines of adverse possession or prescription either prior to or subsequent to the enactment hereof."

See, Session Laws of Wyoming 1955, Ch. 199, § 1. The legislature, in 1955, also created a presumption as to state highways as follows:

"(b) Only that portion of state highways actually used, traveled or fenced, which has been used by the general public for a period of ten (10) years or longer, either prior to or subsequent to the enactment hereof, shall be presumed to be public highways lawfully established as such by official authority and unavailability of records to show such to have been lawfully established shall not rebut this presumption."

See, Session Laws of Wyoming 1955, Ch. 199, § 1.

In 1967, the legislature added county highways to the exception language quoted above, and established the following presumption with respect to county highways:

"Only that portion of county highways, not to exceed sixty-six (66) feet in width, which was actually constructed and substantially maintained by the county and travelled and used by the general public for a period of twenty (20) years or longer, either prior to or subsequent to the enactment hereof, shall be presumed to be public highways lawfully established as such by official authority."

See, Session Laws of Wyoming 1967, Ch. 56, § 1.[4] Then, in 1973, the procedures for acquisition by prescription set forth in footnote 3, supra, were added—resulting in § 24–1–101, supra, as we know it today.

This legislative history must be compared with this court's decisions in *Nixon v. Edwards*, 72 Wyo. 274, 264 P.2d 287 (1953), and *Rocky Mountain Sheep Co. v. Board of County Commissioners of Carbon County*, 73 Wyo. 11, 269 P.2d 314 (1954)—the opinions which served as the basis for our observations in *Board of County Commissioners v. White*, supra.

In *Nixon v. Edwards*, supra—a case decided prior to the 1955 amendments to the predecessor of § 24–1, supra—the plaintiff landowner sued to enjoin the defendants, adjoining landowners, from using a road that plaintiff had constructed on his own land. Defendants proceeded on the theory that the road was a public road by virtue of public adverse use, even though there had been no official county action recognizing it as such. We held, under § 48–301, W.C.S. 1945—the provision that was subsequently amended in 1955, and after other amendments became § 24–1–101, supra—that the road was not a public road. The reason for this holding was the policy, begun in 1886, that roads considered to be public should be shown on the record as public roads by official action. Since the road in question had never been officially established as a public road, it could not be a public road.

In *Rocky Mountain Sheep Co. v. Board of County Commissioners*, supra—another case decided prior to the 1955 amendments to § 24–1, supra—the county commenced a condemnation proceeding to establish a road crossing Rocky Mountain's land as a county road. After a viewer's report had been filed—providing for a roadwidth of 150 feet—and damages assessed for the taking of Rocky Mountain's land, *Rocky Mountain* appealed to the district court. The district court held that 60 feet of the proposed 150-foot right-of-way was an existing road that the county had previously acquired by prescription. On appeal, we recognized that the county had a right to acquire title to lands by prescription in furtherance of its purpose to establish a road,[5] but held that in order to do so the establishment of the road as a public road must be made of record through official county action. As in previous cases, we concluded that use of the road by the public was not enough. In addition, we concluded that the county's records—which consisted of a plat and the report of a surveyor—were insufficient evidence of official action since they failed to show that the county had ever declared the establishment of the road as a public road. In rendering this last-mentioned conclusion, we quoted *a portion* of § 48–322, W.C.S.1945, that prescribed the kind of record which was required. The quoted portion is identical to the provision now found in § 24–60(f), supra footnote 1. Summarizing our holding, we said:

"So, also, if a board of county commissioners relies upon the county's having obtained prescriptive title to lands within a right of way, or any part thereof, in order to avoid the payment of damage for their taking, the inception of such prescriptive title must be evidenced by more formal acts than the user of the road by the public or by the county's construction and maintenance of the road because, in order to be empowered to acquire such prescriptive title, the records of the county must show not only the survey plat of the road but also the proceedings of the board in relation to the road's location, establishment or alteration, thus making manifest the county's purpose to acquire the lands involved." 269 P.2d at 319.

---

4. In 1973, the period of county maintenance and public use—giving rise to a presumption that the road was a public highway lawfully established by official authority—was changed from twenty to ten years. In addition, county maintenance and public use for 10 years became *an alternative way* to establish the presumption, in place of the prior requirement that the county actually construct the road *and then* have public use and county maintenance for the prescribed period. S.L.1973, Ch. 74, § 1.

5. The county's acquisition of land by prescription was authorized at that time by § 27–806, W.C.S.1945. The identical provision is now found in § 18–3–504(a)(vi), W.S.1977.

*After* these cases were decided, the legislature enacted legislation creating a *presumption of official establishment* of state highways where there was public use for the prescribed period. This presumption of official establishment was subsequently extended to county highways, and then, in 1973, specific procedures were established to govern a county's acquisition of a road by prescription.

The 1973 amendments are consistent with our previous holdings that a county must take official action—including a declaration of purpose to acquire the lands and the filing of a survey plat of the proposed roads—before it can acquire a road by prescription.[6] Section 24–1, supra, requires a resolution by the county to establish a public road by prescription, and provides for publication of the proposed road after the filing of a plat and survey pursuant to § 24–3–109, W.S.1977.[7] This is all of the formal action required by our prior decisions. There is, therefore, no need to refer to § 24–60, supra, for the procedures to be followed when establishing a county road by prescription. Section 24–1, supra, now provides all of the necessary procedures.

■ Such a conclusion is not only supported by our analysis of the pertinent legislative history, but is the only way that the inconsistencies between § 24–1, supra, and § 24–60, supra, can be rationally resolved. As noted in the *Board of County Commissioners v. White*, supra, decision, § 24–60 provides that damages, if any, are to be assessed and paid to the person entitled

thereto. Section 24–1(b), supra footnote 3, however, states in pertinent part that

". . . [n]o viewers or appraisers shall be appointed, nor shall any damage claims be considered or heard, and the sole objections to be heard by the board shall be directed against the creation or establishment of such right-of-way under the common-law doctrines of adverse possession or prescription. . . ."

The statutes dealing expressly with the establishment of a county road by prescription preclude the consideration of damage claims. This is the way it must be, because it is axiomatic that one who acquires property by prescription is not liable for the payment of damages. See, *Rocky Mountain Sheep Co. v. Board of County Commissioners*, supra, at 319. To the extent that our decision in *Board of County Commissioners v. White* can be read to say that a county acquiring a public road by prescription *is* liable for the payment of compensation, it is hereby corrected.[8] We hold that in order to establish a public road by prescription, a county need only meet the requirements set forth in § 24–1, supra.

### B.  Section 24–6(b)

■ Having held that § 24–60, supra, has no application to proceedings to acquire a county road by prescription, it follows that § 24–6(b), supra—allowing a landowner to challenge the necessity of the taking of land for road purposes—is also not applicable.

---

**6.** It is noted, in response to one of Hinckley's contentions, that there is no indication of a legislative intent that these formalities must take place *prior to* the commencement of the 10-year period of county maintenance and public use referred to in footnote 4, supra. Any language in opinions decided prior to the 1955 and 1973 amendments to § 24–1, supra, which would suggest a different conclusion is no longer pertinent.

**7.** Section 24–3–109, W.S.1977, provides:
"If, upon considering and acting upon the report of the viewer, or otherwise, the board of the county commissioners shall decide to lay out such road, they shall cause the county surveyor to make an accurate survey thereof,

if such survey is deemed necessary, and to plat and record the same in the book provided by the county for such purpose; and a copy of said plat and notes of survey shall, without unnecessary delay, be filed in the office of the county clerk."
This provision is substantially similar to § 24–3–118(f), supra fn. 1, which is the statutory provision quoted in *Rocky Mountain Sheep Co. v. Board of County Commissioners*, supra.

**8.** This statement should in no way be taken to mean that the holding in *Board of County Commissioners v. Wnite*—to the effect that the county had failed to establish the requisite formalities for the creation of a public road by prescription—is hereby questioned.

Section 24–6(b), supra footnote 2, refers only to a taking of land "under the provisions of chapter 48, article 3, Wyoming Compiled Statutes, 1945." [9] Chapter 48, article 3, W.C.S.1945, is comprised of §§ 48–301 to 48–343, W.S.1945. At the time that § 24–6(b), supra, was enacted, the statutes referred to were silent as to a county's establishment of a public road by prescription.[10] The only mode of acquisition contemplated by these highway statutes was the traditional condemnation-type proceeding (see, § 48–316, W.C.S.1945), except where roads could be established by consent or adjustment of damages (see, § 48–326, W.C.S.1945). There is, therefore, no indication of a legislative intent to require that a county prove a necessity—under § 24–6(b), supra—for the establishment of a public road by prescription.

■ Again, this conclusion is inevitable, since the law of adverse possession or prescription does not contemplate a showing of a person's *need* for the property adversely possessed. In *Stryker v. Rasch*, 57 Wyo. 34, 112 P.2d 570, 576, rehearing denied 57 Wyo. 52, 113 P.2d 963 (1941), we quoted with approval from *Blalock v. Webb*, 190 Ga. 769, 10 S.E.2d 747, 748, to the effect that the manifest purpose of the law of adverse possession is to establish title that is good against the legal title formerly held by others, but forfeited by reason of adverse possession. In order to realize this purpose, an adverse possessor need only prove that his possession is "actual, open, notorious, exclusive, and continuous for the statutory period, hostile, and under color of title or claim of right." *City of Rock Springs v. Sturm*, 39 Wyo. 494, 273 P. 908, 910 (1929). We could find no case authority, and none was cited to us, that requires a showing of necessity in addition to a showing of these elements. We hold that in order to establish a public road by prescription, a county is not subject to the provisions contained in § 24–6(b), supra.

The last-mentioned holding obviates the necessity to discuss the Board's second issue.

## JURISDICTION

Although we normally discuss jurisdictional questions prior to reaching the merits of an appeal, in this case a disposition of the merits was required for a proper analysis of the Board's jurisdictional issue.

■ The Board contends that Hinckley failed to comply with the appeal provisions contained in § 24–1, supra, because he: (1) failed to file a notice of appeal with the county clerk; and (2) failed to timely file the petition for review that was filed. We are unable to ascertain the merit in the first part of this contention since the petition for review (Civil Case No. 12206) bears a certificate of service on the Big Horn County Clerk.

The second aspect of the Board's contention is premised on the belief that the petition for review (Civil Case No. 12206) was filed one day late. The Board calculates that there was a period of 28 days between its December 15 decision and the date on which the Board complied with the writ of mandamus, ordering it to nullify this decision. Then, the Board calculates that there were three additional days between the time the writ was vacated, "reinstating" the December 15 decision, and the time Hinckley's petition was filed on February 4, 1977. The Board adds the days in these *separate* time periods, and concludes that Hinckley filed his petition on the thirty-first day after the Board's decision. In doing so, the Board assumes that the writ of mandamus tolls the time for appeal, but that the tolling effect when eliminated does not provide Hinckley with a new 30-day period within which to appeal.

9. It is noted that § 24–6(b), supra, was originally enacted in 1953, as an amendment to § 48–306, W.C.S.1945. S.L.1953, Ch. 181, § 3.

10. The county had the power to acquire land by prescription for the purpose of establishing a road, by virtue of § 27–806(7), W.C.S.1945, supra fn. 5, but there is no indication of linkage between this section and the predecessor of § 24–6(b), supra.

582

Rule 12.04, Wyoming Rules of Appellate Procedure, provides that if a rehearing is held in an administrative case, then the 30-day appeal period does not commence until the decision on rehearing is given to the parties through a written, certified notice. In other words, when an agency renders a second decision the full appeal period runs from the second decision, and an appealing party need not go back and calculate the days expended between the first decision and the date on which rehearing was granted to determine how many days he has left to appeal after the second decision. The same general rule is applicable to post-trial motion decisions in civil and criminal cases. Rule 2.01, W.R. A.P. It has also been held that where an administrative agency vacates a decision and enters the same decision subsequently, the time for taking an appeal begins to run from the date of the later decision. 73 C.J.S. Public Administrative Bodies and Procedure § 193, at 541 (1951). We find all of these situations analogous to the circumstances herein. It makes little difference whether the Board voluntarily vacated its own decision, or whether a court ordered it to do so—the subsequent entry of the same decision begins the appeal period anew. We hold that Hinckley's petition for review was timely filed.

It might be said that all of the legal maneuvering prior to Hinckley's February 4 filing was wrong, thereby vitiating his right to pursue the appropriate procedures some 51 days after the Board's initial decision. This might be true, were it not for the language in *Board of County Commissioners v. White*, supra—on which Hinckley had a right to rely—to the effect that § 24–60, supra, and thereby § 24–6(b), supra, provided alternate modes of proceeding in an attempt to challenge the establishment of a county road by prescription. Since this court, itself, may have set the trap into which Hinckley fell, it would be inappropriate to penalize Hinckley for his manner of proceeding. It is also for this reason that Hinckley is entitled to have his objections heard by the Board. He obviously believed that a challenge to the necessity of the road

was a condition precedent to a hearing on the elements of adverse possession. Our decision today holds that this belief was erroneous, but only after clarifying one of our previous decisions.

This case is remanded to the district court for entry of an order directing the Board to provide a hearing, in accordance with § 24–1, supra, to all interested parties with objections to the establishment of the proposed road by prescription.

THOMAS, J., filed a specially concurring opinion.

THOMAS, Justice, specially concurring.

I agree with the result of and rationale for the majority opinion in this case. I can go even a step further and find an affirmative legislative intention to eliminate any requirement to demonstrate necessity in a proceeding for the creation or establishment of a public highway right-of-way based upon adverse possession or prescription. In the language of § 24–1(b), W.S. 1957, as amended, 1975 Cum.Supp. (now § 24–1–101(d), W.S.1977) where it is provided, "Only that portion of county highways * * * actually constructed or substantially maintained by the county and travelled and used by the general public for a period of ten (10) years or longer * * * *shall be presumed to be public highways lawfully established as such by official authority*" (emphasis supplied), I can find a conclusive legislative presumption that necessity has been demonstrated.

Why the legislature requires the county to sustain the burden of showing necessity when a county road is sought to be established by condemnation but does not impose that requirement when the board of county commissioners concludes to establish a road under the doctrine of prescription is an anomaly for me. Travel and use by the general public and even county construction and maintenance can be present as much because of convenience as because of necessity. It should not be easier for the county to dedicate private property for use as a public road when the county does not in-

tend to pay for the land than it is to so dedicate such property when the county is required to pay for the land. Yet I agree that this is the product of the present legislative scheme.

It may be that some future legislature will choose to re-evaluate this feature of these statutes. A similar requirement in both instances would be more fair to property owners. In addition the burdens of supervision, management and control of county roads (§ 24–1–104, W.S.1977; *Board of County Commissioners of County of Fremont v. State ex rel. Miller*, Wyo., 369 P.2d 537 (1962)) as well as the public liability attaching to county roads (§§ 1–39–119, W.S.1977; *Oroz v. Board of County Commissioners*, Wyo., 575 P.2d 1155 (1978)) should not be more readily assumed in the instance of establishment by prescription than when the road is established pursuant to the condemnation procedure.